## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                            No. CR 07-1050  JB

MANUEL GUERRERO-MARQUEZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed October 10, 2007 (Doc. 26).  The Court held a sentencing hearing on October 18, 2007.  The primary issues are: (i) whether the Court should grant Defendant Manual Guerrero-Marquez a downward departure for aberrant behavior under U.S.S.G. § 5K2.20; (ii); whether the Court should find that Guerrero-Marquez was a minimal participant under U.S.S.G. § 3B1.2(a); and (iii) whether the Court should substantially under United States v. Booker, 543 U.S. 220 (2005), and the factors set forth in U.S.C. § 3553(a), and depart from the advisory guideline sentence to a sentence substantially less than the advisory guideline sentence.  After considering all the circumstances of the case, the advisory guidelines, and all the applicable sentencing factors under 18 U.S.C. §§ 3553(a) and (f), the Court will deny Guerrero-Marquez' requests for further reductions from his advisory guideline sentence and impose a sentence within the guideline range.

## FACTUAL BACKGROUND

The Court has carefully reviewed Guerrero-Marquez' background and the circumstances of his offense.  The only factor that deserves lengthy scrutiny is Guerrero-Marquez' role in the offense.

1.      **Personal Background.**

Guerrero-Marquez was born in Vera Cruz, Mexico, is twenty-eight years old, and is one of three children.  See Pre-Sentence Investigation Report ("PSR") ¶¶ 34, 35, at 1, 7, disclosed July 16, 2007.  His father abandoned the family when Guerrero-Marquez was very young.  See id. ¶ 34, at 7.  His mother, sister, and brother live in Mexico.  See id. ¶ 35, at 7.

Guerrero-Marquez first came to the United States in 2004 at the age of twenty-four and resided in La Mesa, California.  See id. ¶ 36, at 7.  He has an eight-year old son, Kevin, from a previous relationship, but Guerrero-Marquez keeps in regular contact with Kevin and helps to support him financially.  See id. ¶ 37, at 7-8.  Since 2002, Guerrero-Marquez has been married to Jessie Rose Marquez, and together they have two children, Dominic, age two, and Demaris, who is ten months old.  See id. ¶ 38, at 8.

Guerrero-Marquez has worked his entire life, has no history of substance abuse or alcohol problems, and has had no previous contact with the authorities.  See id. ¶¶ 44-46, at 6, 9.  Guerrero-Marquez has no criminal history other than the current offenses.  See id. at 9.  He is in good health and is not in need of medical care.  See id. ¶ 41, at 8.

2.      **The Offense.**

A person named Jesus approached Guerrero-Marquez at a party in Culiacan, Mexico.  See PSR ¶ 12, at 4.  Upon learning that Guerrero-Marquez was a resident of the United States, Jesus asked Guerrero-Marquez if he would be willing to transport something to this country.  See id. Guerrero-Marquez responded in the affirmative.  See id.

Nevertheless, Guerrero-Marquez was surprised when Jesus called him over a month later and asked him to pick up a package at a hotel in Tijuana, Mexico and take it to Albuquerque, New Mexico, where he would be contacted upon his arrival.  See id. ¶ 13, at 4.  Guerrero-Marquez

-2-

contends that the chance-met stranger in Mexico, known only by his first name, left the package containing more than 1.330 kilograms of heroin unattended in a hotel room, trusting Guerrero-Marquez would find and carry the package into Albuquerque to deliver it to another person whom Guerrero-Marquez does not know.  See PSR ¶¶ 10, 13-16 at 3-4.  Guerrero-Marquez was to receive $500.00 for travel expenses upon his delivery of the package and another $1,000.00 upon his return to California.  See PSR ¶ 15, at 4.

Guerrero-Marquez picked up the package, which he assumed contained a controlled substance, and $1,000.00 in Tijuana.  See id. ¶ 13, at 4.  Guerrero-Marquez was the only person who transported the 1.330 kilograms of heroin.  See id. ¶ 10, at 3.  Guerrero-Marquez transported the package to New Mexico, where he was arrested on the outskirts of New Mexico.  See id. ¶ 7, at 3.

Guerrero-Marquez' role in the offense was that of a "mule" or transporter.  See id. ¶ 16, at 4-5.  He immediately confessed to his role and recognized the seriousness of his mistake.  See Defendant's Sentencing Memorandum at 3-4, filed October 4, 2007 (Doc. 26)("Sentencing Memo.").

**3.      Consequences of Crime.**

Guerrero-Marquez has been incarcerated on this case since January 22, 2007.  See id. at 1.  During this time, he has been separated from his family, and he has been unable to work.  See Sentencing Memo. at 4.  Guerrero-Marquez asserts that the fact that he has been unable to be with his family as a result of his incarceration has weighed heavily on his mind and caused him great consternation.  See id.

As a result of his conviction in this case, Guerrero-Marquez will be permanently excluded from the United States, of which his wife and children are citizens.  See id.  Additionally, illegal aliens have restricted access to Bureau of Prisons programs.  See id.  Guerrero-Marquez' status as a deportable alien places him in more restrictive status of confinement, and denies him access to

minimum-security confinement and programs that are otherwise available to the general population. See, e.g., United States v. Smith, 27 F.3d 649, 650-51 (D.D.C. 1994)(noting that the defendant's status as a deportable alien subjects him to harsher confinement because ineligible for benefits of early release and not eligible for minimum security prison); United States v. Bakeas, 987 F.Supp. 44, 46, 51 (D. Mass. 1997)(noting that legal resident alien was ineligible for community confinement).

## PROCEDURAL BACKGROUND

Without either the safety valve or the minor-role adjustment, Guerrero-Marquez' guideline sentence would be 87-108 months, and the actual sentence imposed would have to be at least 120 months. See Response to Defendant's Sentencing Memorandum at 3, filed October 15, 2007 (Doc. 29)("Response"). The United States agreed to Guerrero-Marquez' request that it recommend a minor-role adjustment under U.S.S.G. § 3B1.2(b), see Response at 3, and in their plea agreement, the United States and Guerrero-Marquez stipulated to a minor-role reduction, see Plea Agreement at ¶ b, at 5, filed May 23, 2007 (Doc. 20)("The Defendant was at least a minor participant in the criminal activity underlying this agreement. Consequently, pursuant to U.S.S.G. § 3B1.2, the Defendant is entitled to a reduction of at least two levels from the base offense level as calculated under the sentencing guidelines."); PSR ¶ 3, at 2 (quoting Plea Agreement ¶ b, at 5). The United States Probation Office ("USPO"), in its Presentence Investigation Report ("PSR"), however concluded that the minor role adjustment is not warranted under the facts of the case, but calculated the guideline sentence in accordance with the parties' agreement. See PSR ¶ 25, at 6, disclosed July 16, 2007 ("In this case, there is no information to suggest the defendant had an aggravating or mitigating role . . . . Therefore, no adjustment appears to be applicable. However, a two level reduction will be applied pursuant [to] U.S.S.G. § 3B1.2(a) in compliance with the plea

agreement.").

Guerrero-Marquez requests that the Court depart downward for aberrant behavior under U.S.S.G. § 5K2.20 and find that he was a minimal participant under U.S.S.G. § 3B1.2(a). See id. Guerrero-Marquez provides no case law or arguments in his sentencing memorandum, however, to support his requests for downward departures or adjudication under those provisions.  See id. Guerrero-Marquez further requests the Court to impose, pursuant to the Supreme Court of the United States' decision in United States v. Booker, 543 U.S. 220 (2005), a sentence substantially less than a sentence that is within the advisory sentencing guideline range. See Sentencing Memo. at 5.  Specifically Guerrero-Marquez requests a sentence substantially less than the advisory guideline sentence.   In addition, Guerrero-Marquez submits several letters for the Court's consideration.  See Letter from Floyd W. Lopez to the Court (dated October 4, 2007). These letters are from Maricela Márquez-Tejeda, Guerrero-Marquez' mother; Elias Gonzáles Alvarado; Gelasio Márquez Tejada, Guerrero-Marquez' uncle; Jessie Rose Marquez, Guerrero-Marquez' wife; Rebecca Hoffman, Guerrero-Marquez' mother-in-law; Ronald J. Hoffman, Guerrero-Marquez's father-in-law; Lynda Osborn; and Sandra Glad, Guerrero-Marquez' former co-worker.  See id.

After Guerrero-Marquez' objections, the USPO wrote an Addendum to its PSR.  See Addendum to the Presentence Report, disclosed October 16, 2007 ("Addendum").  The USPO maintains that the Court should not consider Guerrero-Marquez to be a minor participant and that the guidelines do not authorize a 4-level reduction.  See Addendum at 1.  The USPO also recommends that a departure under U.S.S.G. § 5K2.20 for Aberrant Behavior is not appropriate, because under U.S.S.G. § 5K2.20(c)(3), Guerrero-Marquez is ineligible; his offense is a serious drug-trafficking offense.  See Addendum at 1.  The USPO notes that a serious drug trafficking offense is defined as "any controlled substance offense under title 21, United States Code, other than

simple possession under 21 U.S.C. § 844, that provides for a mandatory minimum term of imprisonment of five years or greater, regardless of whether the defendant meets the criteria of U.S.S.G. § 5C1.2." Addendum at 1.  The USPO notes that Guerrero-Marquez' offense is conviction of Possession with Intent to Distribute Heroin, with a statutory mandatory term of imprisonment of ten years.  See Addendum at 2.

The United States represents that it thought Guerrero-Marquez' debriefing was less than forthcoming.  See Response at 1-2.  The United States does not, however, contest the minor-role adjustment. See Response at 3. The United States also recommends that the Court give Guerrero-Marquez the benefit of the safety value.  See id.

The United States also contends that U.S.S.G. § 5K2.20(c)(3) is inapplicable on its face to cases "where the offense of conviction is a serious drug trafficking offense."  Response at 6 (internal quotations omitted).  The United States contends that the "term [serious drug trafficking offense] is defined to include any Title 21 drug offense that carries a mandatory minimum sentence of five or more years, regardless of whether the defendant qualifies for the safety valve."  Id.

Finally, the United States opposes Guerrero-Marquez' request for departure under U.S.C. § 3553(a) and United States v. Booker.  See Response at 4-5.  The United States contends that Guerrero-Marquez' circumstances "may conceivably warrant imposing a sentence at the bottom of the guideline range, [but] do not justify any further post-Booker departure or variance."  Response at 4.  The United States contends that a guideline sentence of 46 to 57 months fully takes into account the nature and circumstances of the offense, and the history and characteristics of the defendant.  See id.

On October 18, 2007, before the sentencing hearing, Guerrero-Marquez submitted a copy of United States v. Dias-Ramos, 384 F.3d 1240 (10th 2006), vacated and remanded for further

consideration in light of <u>United States v. Booker</u>, 126 S.Ct. 671 (2005), for the Court's consideration. <u>See</u> Letter from Floyd W. Lopez to the Court (dated October 18, 2007). The Supreme Court of the United States vacated the decision of the United States Court of Appeals for the Tenth Circuit in <u>United States v. Dias-Ramos</u> and remanded the case for further consideration in light of the Supreme Court's decision in <u>United States v. Booker</u>.

The Court held a hearing on this matter on October 18, 2007. Guerrero-Marquez' counsel admitted that he cited U.S.S.G. § 5K2.20 in the Sentencing Memorandum "without completely analyzing the guideline itself." Transcript of Hearing (taken October 18, 2007) ("Tr.") at 8:13-17 (Lopez).[1]  Guerrero-Marquez conceded that "[t]he Government and the probation officer [are] absolutely correct, because this is classified as a serious drug offense around the commentary to [U.S.S.G. § 5K2.20] . . . because there was a minimum mandatory initially in this case without regard to the limitation under the safety valve . . . the guideline does not technically apply." Tr. at 8:18-20 (Lopez). Guerrero-Marquez clarified that he submitted <u>United States v. Dias-Ramos</u>, 384 F.3d 1240 (10th 2006), "to show . . .while the . . . guideline may not be applicable because of the statutory minimum mandatory . . . [that the Court] does have the discretion, if [it] sees fit, to impose a sentence considering aberrant behavior even though it would technically be precluded under section 5K2.20 of the sentencing guidelines." Tr. at 9:13-22 (Lopez). Guerrero-Marquez withdrew his request for a downward departure and instead asked that his aberrant behavior arguments be considered as part of his <u>United States v. Booker</u> arguments. <u>See</u> Tr. at 15:5-11 (Court & Lopez).

The United States acknowledges that, in many drug trafficking cases involving the courier, there is independent evidence that the defendant had been a transporter or a courier before, but that

_____

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

there was no evidence that Guerrero-Marquez had ever been a courier before this incident.  See Tr. at 10:17-11:3 (Kimball).  The United States noted that Guerrero-Marquez initially tried to cooperate with the prosecution, but either decided not to, or was not able to provide further information identifying the people from whom he got the heroin or was taking it, and "while it[ ] strains credulity a little to think he would know so little about them he did give [the United States] information to know they did exist."  Tr. at 11:8-14 (Kimball).

## RELEVANT LAW REGARDING SENTENCING GUIDELINES

Before the Court considers Guerrero-Marquez's primary argument -- that the Court vary substantially under United States v. Booker from the advisory guideline sentence -- the Court must accurately determine the guideline sentence.  Here, the safety valve is heavily dependent upon the United States' assessment of the defendant's truthfulness.  Moreover, Guerrero-Marquez is not satisfied with the role reduction for a minor participant, but urges the Court to give him a 4-level reduction for minimal participant.

### 1.    Safety Valve.

"A defendant who is subject to a mandatory minimum qualifies for a "safety valve" if he meets the requirements of § 3553(f)." United States v. Falcon, No. CR 05-0469 JB, 2006 WL 4079029 at * 2 (D.N.M. June 5, 2006)(Browning, J.).  In United States v. Falcon, the Court noted that:

> The safety valve makes the defendant eligible for a Guidelines sentence, instead of the mandatory minimum, if:
>
> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act [21 USCS § 848]; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

United States v. Falcon, No. CR 05-0469 JB, 2006 WL 4079029 at * 2-3 (quoting 18 U.S.C. § 3553(f))(alterations in the original).  To qualify for the safety valve, a defendant is required to tell "not only everything he knows about his own actions, but also everything he knows about his co-conspirators."  United States v. Stephenson, 453 F.3d 1178, 1180 (10th Cir. 2006).

### 2.    Departure Under U.S.S.G. § 5K2.20.

U.S.S.G. § 5K2.20(c)(3) states that the aberrant behavior departure is not to be applied in cases where the offense of conviction is a "serious drug trafficking offense."   U.S.S.G. § 5K2.20(c)(3).  "'Serious drug trafficking offense' means any controlled substance offense under title 21, United States Code, other than simple possession under 21 U.S.C. 844, that provides for a mandatory minimum term of imprisonment of five years or greater, regardless of whether the defendant meets the criteria of 5C1.2 (Limitation on Applicability of Statutory Mandatory Minimum Sentences in Certain Cases)." U.S.S.G. § 5K2.20(c)(3), cmt. app. n. 1.  This offense of conviction carries a mandatory minimum sentence of ten years.  See PSR at 1.

### 3.    Other Factors that Might Be Relevant to Sentencing Under the Guidelines.

As the court noted stated in United States v. Ranum, 353 F.Supp.2d 984 (E.D.Wis. 2005),

the Sentencing Guidelines generally forbid consideration of factors such as age, employment record, family ties and responsibilities, and socio-economic status. See Koon v. United States, 518 U.S. 81, 94 (1996)("The Commission provides considerable guidance as to the factors that are apt or not apt to make a case atypical, by listing certain factors as either encouraged or discouraged bases for departure."); United States v. Ranum, 353 F.Supp.2d at 986 ("[U]nder the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1, his education and vocational skills, § 5H1.2, his mental and emotional condition, § 5H1.3, his physical condition including drug or alcohol dependence, § 5H1.4, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socio-economic status, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12.").

## LAW REGARDING VARIANCES UNDER UNITED STATES v. BOOKER

In United States v. Booker, the Supreme Court severed the mandatory provisions from the Federal Sentencing Act, thus making the Guidelines effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical
> care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty

of an offense described in any Federal statute [ . . . ] shall be sentenced in accordance with the

provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D)

of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the

case.").  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i)

the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available

sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes;

and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the Tenth

Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C.

§ 3553(a), they are entitled to considerable deference.  See Rita v. United States, 127 S. Ct. 2456,

2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined

tens of thousands of sentences and worked with the help of many others in the law enforcement

community over a long period of time in an effort to fulfill [its] statutory mandate."); United States

v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor

among many").  They are significant because "the Guidelines are an expression of popular political

will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen

years' worth of careful consideration of the proper sentence for federal offenses."  United States v.

Cage, 451 F.3d at 593 (internal quotations omitted).   A reasonable sentence is one that also

"avoid[s] unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct." 18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at

261-62.

## ANALYSIS

Guerrero-Marquez seeks a sentence that is "substantially less" than the sentence that the advisory guidelines recommend.  See Sentencing Memo. at 5.  He seeks downward adjustments and departures under the guidelines, citing in his sentencing memorandum, with no factual or legal discussion, to U.S.S.G. §§ 5K2.20 (aberrant behavior) and 3B1.2(a)(minimal participant).  See Sentencing Memo. at 5.  He also seeks a variance from the guideline sentence, invoking some, but not all, of the factors in 18 U.S.C. § 3553(a), namely §§ 3553(a)(1) and (2).  See Sentencing Memo. at 3-5.  While the Court recognizes Guerrero-Marquez as a minor participant, and gives him a downward adjustment in his offense level, none of the other reasons are sufficient, alone or in combination with the others, to warrant any adjustment, departure, or variance from the sentence that the United States Probation Office has calculated in accordance with the Guidelines.

## I.   THE COURT WILL NOT GRANT GUERRERO-MARQUEZ A FURTHER ROLE REDUCTION TO "MINIMAL" PARTICIPANT STATUS.

Guerrero-Marquez appears to object to paragraph 25 of the PSR, because he indicates that he should be considered a minimal participant pursuant to U.S.S.G. § 3B1.2(a) and receive a 4-level reduction.  See Sentencing Memo. at  5; PSR ¶ 25, at 6; Addendum at 1.  While Guerrero-Marquez asks, in his sentencing memorandum, for a further role reduction to "minimal" participant status, he does nothing more than cite to the guideline section without factual or legal discussion to support this position.  See Sentencing Memo. at 5.  The Court believes that the 2-level reduction to which the United States has stipulated pursuant to U.S.S.G. § 3B1.2(b) is appropriate and the most that Guerrero-Marquez should receive, and will thus reject Guerrero-Marquez' request for a further reduction.

In an interview with authorities, Guerrero-Marquez stated that he was paid $1,000.00, plus $500 for expenses, for transporting heroin to its final Albuquerque destination, and was to be paid an additional $1,000.00, plus expenses, once the heroin was successfully transported to its final destination. See PSR ¶ 16, at 4-5. Beyond the assertion of being paid to transport heroin on this occasion, there is not much information regarding how much he knew or did not know of this or other heroin trafficking activity. See Response at 1-2. The Addendum to the PSR states that, in addition, Drug Enforcement Administration agents assigned to the case have not specifically identified any individuals for whom Guerrero-Marquez may have been working in the drug trafficking activity. See Addendum at 1. To be characterized as a minor participant or a minimal participant, a defendant must be considered substantially less culpable than the average participant in the crime. While the other participants remain relatively unknown, the Court is comfortable finding that Guerrero-Marquez is substantially less culpable than the other people in the criminal enterprise. But to be found a minimal participant, Guerrero-Marquez must be plainly the least culpable of those involved in the conduct of the criminal enterprise. Compare U.S.S.G § 3B1.2, app. n. (C)(4)("Minimal Participant. -- Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. It is intended that the downward adjustment for a minimal participant will be used infrequently.") with U.S.S.G § 3B1.2, app. n. (C)(5)("Minor Participant.--Subsection (b) applies to a defendant described in Application Note 3(A) who is less culpable than most other participants, but whose role could not be described as minimal.").

-13-

While the Court is comfortable accepting the stipulation to a minor role adjustment, because he was apparently no more than a courier and couriers usually receive some role adjustment in this District, the Court believes that there is insufficient information to convince the Court that a 4-level reduction is warranted. Based on the information before the Court, it appears that Guerrero-Marquez should be considered a minor participant, but not a minimal participant, and should receive a 2-level reduction, not a 4-level reduction.

## II.   THE COURT WILL NOT GRANT GUERRERO-MARQUEZ A DOWNWARD DEPARTURE FOR ABERRANT BEHAVIOR.

Guerrero-Marquez cites in his sentencing memorandum, without argument, to U.S.S.G. § 5K2.20 as a justification for a downward departure under the guidelines for alleged "aberrant behavior." Sentencing Memo. at 5. Guerrero-Marquez conceded at the hearing, however, that U.S.S.G. § 5K2.20 is inapplicable to him: "The Government and the probation officer [are] absolutely correct, because this is classified as a serious drug offense around the commentary to [U.S.S.G. § 5K2.20] . . . because there was a minimum mandatory initially in this case without regard to the limitation under the safety valve . . . the guideline does not technically apply." Tr. at 8:18-20 (Lopez). U.S.S.G. § 5K2.20(c)(3) states that the departure for aberrant behavior is not to be applied in cases where the offense of conviction is a "serious drug trafficking offense." U.S.S.G. § 5K2.20(c)(3). "'Serious drug trafficking offense' means any controlled substance offense under title 21, United States Code, other than simple possession under 21 U.S.C. 844, that provides for a mandatory minimum term of imprisonment of five years or greater, regardless of whether the defendant meets the criteria of 5C1.2 (Limitation on Applicability of Statutory Mandatory Minimum Sentences in Certain Cases)." U.S.S.G. § 5K2.20(c)(3), cmt. app. n. 1. This offense of conviction carries a mandatory minimum sentence of ten years. See PSR at 1.

-14-

The Court will reject Guerrero-Marquez' unsupported argument.  The aberrant behavior departure is not available to Guerrero-Marquez.    Accordingly, the Court will deny Guerrero-Marquez a departure under U.S.S.G. § 5K2.20 for aberrant behavior.  Moreover, even if the downward departure were available, the Court would deny Guerrero-Marquez' request for a downward departure under the facts and circumstances of this case.  Guerrero-Marquez' case fits squarely into the heartland of cases that this District, the other border Districts, and the nation sees on an almost daily basis.  Unfortunately, the Court sees too many people succumb to the temptation to secure easy cash for the task of moving large quantities of drugs.  There is nothing particularly unusual about Guerrero-Marquez' case.

Furthermore, even if the Guidelines allowed a downward departure for aberrant behavior in serious drug trafficking cases and the facts and the circumstances justified a downward departure, the Court would exercise its discretion not to grant a downward departure in this case.  The Court does not know much about Guerrero-Marquez.  The Court cannot determine, from the thin record before it how abrupt Guerrero-Marquez' actions are.

At the hearing, Guerrero-Marquez requested that the Court take into account his arguments regarding U.S.S.G. § 5K2.20 as part of his request for a variance under United States v. Booker. See Tr. at 15:5-11 (Court & Lopez). The Court will comply with this request.

## III.    THE COURT WILL DENY GUERRERO-MARQUEZ' REQUEST FOR A VARIANCE GUIDELINE SENTENCE.

The Court believes that it has accurately calculated Guerrero-Marquez' advisory guideline sentence.  Nevertheless, Guerrero-Marquez urges the Court to vary substantially from that guideline sentence.  Because the Court -- with its liberal application of the minor-role adjustment and the safety valve -- already reduced Guerrero-Marquez' sentence substantially below the mandatory

minimum, the Court will deny his request for a variance.

A.    **GUERRERO-MARQUEZ HAS BENEFITTED CONSIDERABLY FROM THE PLEA AGREEMENT.**

While the Court must carefully balance the factors in § 3553(a) before it rules on Guerrero-Marquez' request for a Booker variance, before doing so, it is important to see how liberal the United States and the Court already have been in their application of the sentencing guidelines. The Court has an obligation to be objective and not accept the parties' stipulations blindly, but the Court is nevertheless heavily dependent on the United States' representations about the debriefing and the facts of the offense. And the reality is that the Court has arrived at a guideline sentence that is highly favorable to Guerrero-Marquez.

First, Guerrero-Marquez secured substantial concessions from the United States in the plea agreement. The Court has been liberal in applying the minor-role reduction. Guerrero-Marquez is the only participant in the crime of conviction, although there is evidence that others were involved. See PSR ¶ 25, at 6.

Second, this reduction for minor role assisted Guerrero-Marquez in becoming eligible for the safety valve. Guerrero-Marquez has already benefitted significantly from a 2-level safety valve reduction under § 3553(f). The United States recommends that the Court apply the "safety valve," even though the United States thought his debriefing was less than forthcoming and now states that "he is not really entitled to it." Response at 2. If the United States had not agreed to recommend Guerrero-Marquez for the safety valve, he would have had to be sentenced to at least the statutory minimum of 120 months, without regard to any departures, adjustments, or variances. See PSR at 1.

While the United States assures the Court and Guerrero-Marquez that it is not going back

on its agreement to recommend the safety valve, and effectively, a 4-level reduction for minor role, the United States emphasizes that it did not have to give those concessions.  See Response at 3.  The United States contends that Guerrero-Marquez' story is "extremely thin" and one that the Court sees often.  Response at 2.

The United States contends that the participants' behavior is not reasonable.  The United States believes it is not likely that the participants knew so little about each other.  See id.  The United States states that, "[n]evertheless, in an exercise of apparently misplaced sympathy, and on the off-chance that the defendant's story might conceivably be possible . . . ," the United States decided to recommend Guerrero-Marquez for the safety valve "despite his omissions . . . ."  Id.

While the United States' factual basis for its stipulation does not give the Court all the support and comfort it would like when it makes a finding that a defendant is entitled to the safety value, the Court is, to a significant degree, dependent upon the United States' assessment as to the value of the information that the defendant gives during debriefing.  And while the United States has chosen to share its concerns in this case, ultimately, the United States has determined that Guerrero-Marquez has satisfied his obligations under 18 U.S.C. § 3553(f), and through its agents and officers of the Court, recommended that the Court make a factual finding.  There are, however, some factors that allow the Court to make an independent evaluation of Guerrero-Marquez' cooperation.  Guerrero-Marquez admitted that he knew he was carrying drugs, probably heroin, and he gave some details about the stranger who supposedly arranged the transaction and the payment he was to receive.  See PSR ¶¶ 12-16, at 4-5.

Guerrero-Marquez has already benefitted significantly from a 2-level safety valve reduction under § 3553(f). The Court must factor into its determination of what is a reasonable sentence, under all the circumstances, that the resulting guideline already embodies substantial adjustments in

Guerrero-Marquez' favor.   Nevertheless, Guerrero-Marquez wants more sentencing concessions under § 3553(a).  <u>See</u> Sentencing Memo.

The Court believes that it is appropriate to focus on the advisory guidelines as well as the sentencing factors in §§ 3553(a) and (f).  The guidelines are time-tested.  And when the Court applies these § 3553(a) factors, and compares these to the advisory guideline sentence, the Court concludes the guideline sentence reflects well the § 3553(a) factors.

**B.     THE SENTENCING FACTORS UNDER § 3553(a) DO NOT JUSTIFY FURTHER REDUCTIONS IN GUERRERO-MARQUEZ' SENTENCE.**

Guerrero-Marquez' personal circumstances warrant imposing a sentence at the bottom of the guideline range.  <u>See</u> Sentencing Memo. at 3-5.  They do not, however, justify any further post-Booker departure or variance.  The PSR's guideline calculations already fully take into account the factual underpinnings of the § 3553(a) factors that Guerrero-Marquez cites.

**1.     <u>The Nature and Circumstances of the Offense.</u>**

A guideline sentence of 46-57 months fully takes into account "the nature and circumstances of the offense."  18 U.S.C. § 3553(a)(1).  To his credit, Guerrero-Marquez does not try to minimize the seriousness of the offense.  Guerrero-Marquez brought well over a kilogram of heroin into the United States, knowing that it would be distributed here.

The Court must assume that Guerrero-Marquez cared more about the money that he would be paid than the damage that the vicious drug of heroin would possibly inflict on hundreds of people and their families.  Congress has determined that heroin is such a serious offense that possession of one-hundred grams of it should result in a mandatory sentence of 60 months.  <u>See</u> Response at 4. In this case, Guerrero-Marquez had more than thirteen times the amount that Congress considered worthy of a statutory minimum of 60 months.  <u>See</u> <u>id.</u>

-18-

For the most part, Guerrero-Marquez relies upon and recites the bare bones of the story to which he admits to argue for a variance. <u>See</u> Sentencing Memo. at 3-4. To the extent that Guerrero-Marquez is suggesting -- again -- that he was a courier and had a minor role in the overall crime -- the Guideline sentence already fully takes that factor into account. This factor --the nature and the circumstances of the offense -- does not counsel for a variance from a guideline sentence that well reflects Guerrero-Marquez' role in the crime and, if anything, is already considerably below Congress' mandatory minimum for similar crimes.

### 2.    The History and Characteristics of the Defendant.

Guerrero-Marquez states that the incarceration he has already served has taught him a severe lesson and constitutes sufficient punishment to deter any return by him to the United States. <u>See</u> Sentencing Memo. at 4. But to allow Guerrero-Marquez a deviation to a sentence substantially below the advisory guideline sentence would be to not give sufficient weight to Congress' concerns about drug trafficking. Guerrero-Marquez needs to spend more time -- considerably more time -- in prison.

A guideline sentence of 46-57 months fully takes in account "the history and circumstances of the defendant." 18 U.S.C. § 3553(a)(1). Specifically, the PSR and the guideline sentence already takes into account the favorable aspects of his history and characteristics. His criminal history category I takes into account his lack of prior arrests. <u>See</u> PSR ¶ 32, at 6, 7. This lack of criminal history allows him to be eligible for the two-level safety valve reduction, which he has already received.

That Guerrero-Marquez has children, has a work history, and is allegedly not a drug user are not such uncommon factors in everyday life that they would justify a departure or variance from the guideline sentence. Some of the factors are so common among defendants that they do not deserve

much weight.  In any case, none outweigh the seriousness of his crime.

**3.**     **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.**

The guideline sentence also reflects the seriousness of the offense, promotes respects for the law, and provides just punishment.  See 18 U.S.C. § 3553(a)(2)(A).  In legislating the statutory penalties, Congress determined that a sentence of at least 120 months is normally a just punishment that is necessary to reflect the seriousness of this offense.  The guideline sentence in this case will effectively promote respect for the law by sending the message that the consequences for transporting such a large amount of heroin will be substantial.

The guideline sentence will also effectively provide just punishment.  This guideline sentence has given Guerrero-Marquez the benefit of the safety value reduction.  A further variance would fail to promote respect for the law, because it would send the message that the supposedly mandatory penalties are illusory and can be avoided because of ordinary life situations.  A departure from the statutory sentence for the reasons that Guerrero-Marquez cites would frustrate the considered judgment of both the elected representatives of Congress and the duly appointed members of the Sentencing Commission.

Congress and the Commission have made a decision how much the safety valve reduction is worth.  For the Court to vary substantially from the advisory guideline sentence, with its safety valve reduction, would be to override that considered judgment without considerable recognition.  These factors do not counsel for a variance.

**4.**     **The Need of the Sentence to Afford Adequate Deterrence to Criminal Conduct.**

Guerrero-Marquez contends that his inability to be with, and to provide for, his family has

been a severe punishment and has deterred any thought of committing any other criminal act.   See Sentencing Memo. at 4.   Guerrero-Marquez states that he is extremely remorseful for having caused this situation and wishes never to repeat it.   See id.   He maintains that incarceration and separation from his family to this point serves as an adequate deterrence from further crimes.   See id. Guerrero-Marquez argues that prolonged incarceration in this case will not serve the public.   See id.

The guideline sentence calculated in the PSR affords more adequate deterrence to criminal conduct, see 18 U.S.C. § 3553(a)(2)(B), because it confirms to those who might consider bringing in kilogram quantities of heroin that there will be a serious consequence.   A variance from the guideline sentence, in contrast, would fail to deter would-be kilogram-level drug traffickers by signaling that the penalties are not necessarily as serious as advertised and can be avoided relatively easily.   This factor counsels for the guideline sentence and against a substantial variance.

### 5.   The Need of the Sentence to Protect the Public from Further Crimes of the Defendant.

The guideline sentence also protects the public from further crimes by Guerrero-Marquez. See 18 U.S.C. § 3553(a)(2)(C).   Guerrero-Marquez will be removed from society in both Mexico and in the United States for the full length of time that Congress determined is necessary to protect the public from first-time offenders who accept responsibility for their actions and give truthful and complete safety-valve debriefings.   The protection society needs is not necessarily from Guerrero-Marquez' potential physical violence, but rather from the potential that he will continue to assist in the poisoning of United States citizens and residents with heroin.

      **6.**     **The Need for the Sentence to Provide the Defendant with Needed Educational or Vocational Training, Medical Care or Other Correctional Treatment in the Most Effective Manner.**

As for the need to provide the defendant with the opportunity to obtain needed education or treatment, see 18 U.S.C. § 3553(a)(2)(D), Guerrero-Marquez admits that this factor is not applicable in this case.  See Sentencing Memo. at 5.  There is no demonstrated need of educational or vocational training in this case.  This factor does not counsel for a variance.

      **7.**     **Other Factors.**

Other important relevant sentencing factors include the kinds of sentences available, see 18 U.S.C. § 3553(a); the guideline sentencing range developed after nearly twenty years of experience with the guideline system, see 18 U.S.C. § 3553(a)(4); and the need to avoid unwarranted sentencing disparity among similarly situated defendants of similar culpability, see 18 U.S.C. § 3553(a)(6).  Not all factors are equally important.  Those additional factors weigh -- some heavily -- in support of a sentence within the correctly calculated advisory guideline range.

In conclusion, after consideration of all the sentencing factors in the advisory guidelines and in 18 U.S.C. §§ 3553(a) and (f), the Court will decline to depart or vary from the guideline sentencing range.  In this case, Guerrero-Marquez' conduct is serious and merits a severe sentence. The Court believes that the PSR has correctly calculated the guideline sentence and that, under the facts and circumstances of this case, the guideline sentence is appropriate.

      **IT IS ORDERED** that the requests in the Defendant's Sentencing Memorandum are denied.


_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
   Acting United States Attorney
Sharon R. Kimball
   Assistant United States Attorney
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Floyd W. Lopez
Floyd W. Lopez, P.A.
Albuquerque, New Mexico

       *Attorney for the Defendant*